**TITANIUM METALS CORPORATION OF AMERICA, a Delaware Corporation, Plaintiff and Respondent,**

v.

**SPACE METALS, INC., a corporation, and Valley Bank & Trust Company, a Utah Corporation, Defendants and Appellants.**

**VALLEY BANK & TRUST COMPANY, a Utah Corporation, Cross-Plaintiff and Appellant,**

v.

**SPACE METALS INC., a corporation, Cross-Defendant.**

No. 13474.

Supreme Court of Utah.

Dec. 13, 1974.

2. Section 78–27–23, U.C.A.1953 (1973 Pocket Supplement).

3. 25 Utah 2d 357, 482 P.2d 332 (1971).

Irving H. Biele of Biele, Haslam & Hatch, Salt Lake City, for appellant, Valley Bank & Trust Co.

Alvin I. Smith of Arnovitz, Smith & Nielson, Salt Lake City, for respondent, Titanium Metals Corp.

HENRIOD, Justice:

Appeal from a judgment in a case tried to the court, involving letters of credit, in which defendant Bank was held accountable. Affirmed with no costs awarded.

This case involves three differently worded, but somewhat similar letters of credit written by the Bank and directed to Titanium *at the request of Space Metals, Inc.* The dates and pertinent language respectively were:

I. May 28, 1968: "We have approved a $15,000 line of credit *for one of* our very reliable customers, Space Metals, Inc. This line is for the specific purpose *of covering invoices* from your company . . . good until August 15, 1968. We appreciate the opportunity of *serving our customer in this capacity.*"

II. October 8, 1968: "We have agreed with . . . Space Metals, Inc. to pay all of your collection drafts . . . until December, 1968. *It has maintained a very good account and working relationship with our Bank . . . and . . . it looks as if the . . . Company should have a very profitable year.*"

III. March 3, 1969: "We have agreed with Space Metals, Inc. *to pay all* of your collection drafts . . . for a period of 90 days from . . . date . . .. Our customer . . . *has maintained a very good account and working relationship with this Bank . . . and . . . it appears that this year will be substantially better.*"

The Bank honored by cashier's checks payable to Titanium, a good number and all of the invoices sent to it, covering goods shipped to Space Metals, as it had honored Letter I, noting thereon that Space Metals was purchaser, and sent cashier's checks of like tenor, after receiving either the originals or copies of invoices, under Letter II, and one cashier's check dated June 1, 1969, under Letter III, in which cases the Bank had notified Space Metals of the invoices and amounts involved, and after which, before the due dates, Space Metals arranged with the Bank to cover the amounts, except perhaps in one instance,—at which times the Bank issued its customary cashier's checks, payable to Titanium, with notations of *amounts,* the *invoice numbers,* and designation of Space Metals as *purchaser.* In each instance the Bank executed a written pink *"Advice"* voucher on which it noted the transaction under *"Description"* as a *"Sales Draft."* In addition, all of the invoices furnished the Bank were stamped "Paid on payment of the amount shown and had imprinted the following language stamped thereon by Titanium:

"Please Remit to: Titanium Metals Corp. of America, P. O. Box 54049, Terminal Annex, Los Angeles, California 90054."

There were six other invoices which Titanium urges were covered by Letter III, but which were not paid, and which remained and still remain unpaid, the last of which was dated June 1, 1969. It was not until five and a half months later, on October 19, 1969, that the six unpaid invoices were returned to Titanium, by the Bank, with each invoice having attached thereto its pink "Advice," with the notation "We *return* herewith unpaid."

An assistant vice president of the Bank, testifying in its behalf indicated that invoices and amounts payable thereunder were processed and paid the same way under Letter of Credit I and Letter of Credit

II. The first of the series of seven invoices under Letter of Credit III obviously was processed in the same manner according to the record, and the witness further revealed that there were no communications between the Bank and Titanium during the time the payments were sent by the former to the latter, and there is nothing in the record that indicates that Titanium had any idea what personal fiscal arrangement the Bank had with its customer, Space Metals. On the contrary, the record reflects only three successive Letters of Credit under which invoice amounts promptly were paid before the due dates *by the Bank,* on *its* cashier's checks, purchased by Space Metals, under documents furnished to Titanium, consisting of "Advices" executed by the Bank, authorizing payment to Titanium of "Sales Drafts," in the precise amounts shown on the invoices, and on a "request" or "order" to "Please Remit" to Titanium clearly stamped on each invoice—which was done *by the Bank with* its own cashier's checks, and forwarded *by the Bank* in *its* own enclosures to Titanium.

On the basis of these facts the trial court found that Titanium extended credit to Space Metals under Letter of Credit III in reliance thereon, together with the "Please Remit" notation on the invoice and the typed "Sales Draft" notice on the Bank's authorization voucher or "Advice," —and that the Bank was obligated to pay the remaining six invoices under Letter of Credit III.

■ We are constrained to and do hold that the language of the Letters, supplemented by the documents and written notations mentioned, constituted valid, enforceable promises to pay the amounts evidenced by the invoices mentioned. We think such conclusion is supported by basic principles touching contracts, irrespective and independent of Section 70A–5–102, Commercial Credit Code, but nonetheless in harmony with its provisions and compliant therewith.

The Bank urges on appeal that the trial court erred by finding it had waived the

requirement that a draft was necessary as an adjunct to the Letter of Credit, because 1) such waiver was not pleaded by the plaintiff, Titanium; 2) it was not supported by the evidence; 3) in not. construing the Letter of Credit strictly to require the attachment of a draft, and 4) in deciding the case on a waiver theory which neither was pleaded nor proved.

It may have been unfortunate that the court interjected the language about waiver in his Findings. It really was unnecessary since the findings were to the effect that the Letter of Credit created a contractual obligation, with which we agree in the light of the inseparable appendages in the form of invoices, sales draft notations, order to pay on the invoices themselves,— and what seems to be more important, the long course of conduct of the parties, with the numerous shipments, acceptances, orders to remit and compliances therewith, reflecting, in our opinion, clear manifestations of mutual assent, and intention on all sides that the combined writings should have the stature of a true, binding letter of credit. To decide otherwise, we think, would be to decide that the Letters of Credit in this case were useless, impotent and unilateral gestures upon which no one could rely,—all of which belies the effective fait accompli aspect and complexion of this case.

As to 1) above: Our conclusion eliminates the question of waiver; and as to the pleading feature, under Rule 8(c), Utah Rules of Civil Procedure, waiver must attack a preceding pleading, which is not the case here, since the Bank in substance and effect seeks to have it attack a subsequent, not preceding contention or state of facts.

■ As to 2): We believe the facts abstracted hereinabove indicate that there was an enforceable obligation irrespective of any suggestion of waiver.

As to 3): We think the evidence reflects a demand for payment and actual payments made on numerous occasions, by documents not physically attached to the invoice, but

incorporated in it and recognized by the Bank's own "Advice."

As to 4) : We suggest that the pleading does not bottom this case on any theory of waiver. It is based on a theory ex contractu, and the evidence supports such theory.. It is clear from the record that Titanium relied on the Letters of Credit, its request for payment on the invoices themselves and the many payments that were accomplished under the instruments in support of such a contract theory. The matter of waiver as a theory was not advanced or suggested by the Bank at any juncture over a long period involving numerous shipments and payments; it was not mentioned as a basis for a new trial, and was suggested for the first time in its motion to amend the findings. (Emphasis added.)

CALLISTER, C. J., and CROCKETT, and TUCKETT, JJ.

ELLETT, Justice (dissenting).

I dissent. The appellant Bank gave three so-called letters of credit to the plaintiff. No problems arose over the first two. It is the third letter which gives rise to this appeal. It was, so far as material, in words as follows: "We have agreed . . . to pay all of your collection drafts upon presentation or due date for a period of ninety days . . . ."

Thereafter no collection drafts were ever presented for payment. Merchandise was shipped to Space Metals, Inc., accompanied by invoices, with copies being sent to the Bank. The Bank transmitted to plaintiff written advices to the effect that the copies of invoices were returned unpaid.

The law is to the effect that a letter of credit must be strictly complied with before the Bank is liable. The law is set forth in 50 Am.Jur.2d, Letters of Credit, and Credit Cards, § 21, as follows:

If the letter of credit contemplates the presentation of specified documents, the liability of the bank issuing the letter of credit depends on the showing as to whether the designated documents were forwarded or duly presented, and an issuing bank is required to pay or is exonerated from paying on a letter of credit according to whether the documents presented to it conform to what is required by the letter . . . .

The trial court sitting without a jury found that the Bank had waived the requirement of the presenting of a collection draft, although waiver was not pleaded. It is an affirmative defense and must be set forth affirmatively in order to be a defense.[1]

I would reverse the judgment and award costs to the appellant.